[No. 31906. Department Two. April 10, 1952.]

HILDA JANE STARKEY, *Appellant,* v. FRANK D. STARKEY, *Respondent and Cross-appellant.*[1]

[1]Reported in 242 P. (2d) 1048.

*Del Cary Smith,* for appellant.

*Geo. W. Young* and *Jack R. Dean,* for respondent and cross-appellant.

HAMLEY, J.—Frank D. Starkey, on July 17, 1950, began this proceeding to enjoin his divorced wife from attempting to collect, through execution or other process, child support arrearages and a money balance due under the provisions of the divorce decree. A temporary restraining order was entered, enjoining Mrs. Starkey (now Mrs. Kroll) and the sheriff from proceeding under a writ of execution which had been issued. The order further required Mrs. Starkey to immediately deliver to Mr. Starkey the children of the parties for visitation during that summer, as provided in the interlocutory order. Mrs. Starkey was also required to show cause why she should not be permanently enjoined from proceeding with the execution and why she should not be required to satisfy the three-thousand-dollar judgment which had been awarded to her in the divorce decree.

Mrs. Starkey disregarded the provision of this order requiring that the children be permitted to visit at Mr. Starkey's home during the summer of 1950. She also filed a motion to dissolve the restraining order and order to show cause. By stipulation, the hearing on the show cause order and motion to dissolve was transferred from Whitman county, where the divorce had been obtained and where Mr. Starkey resided and held his property, to Spokane county.

A hearing was had on September 8, 1950, at which oral testimony and exhibits were received. A further hearing was held on December 20, 1950. On July 6, 1951, findings of fact, conclusions of law, and a decree were entered. Mrs.

Starkey appeals, and Mr. Starkey cross-appeals. Because of the cross-appeal, we will, throughout this opinion, designate Mrs. Starkey as plaintiff and Mr. Starkey as defendant.

The interlocutory order was entered on December 17, 1946. Defendant was awarded all of the real and personal property. In exchange, he was to pay plaintiff two thousand dollars within ten days, and one thousand dollars, without interest, at the end of one year. Plaintiff was given the custody of the two children—girls then of the age of seven and eight years. They were not to be taken permanently "out of the jurisdiction of the court," except by order of the court. Defendant was given reasonable rights of visitation. The interlocutory order also provided that he was to have the right to have the children visit him in his home from June first to August first of each year, and on alternate weekends during the school year. He was ordered to pay seventy-five dollars a month to plaintiff for the support of the children.

The divorce decree became final on August 13, 1947. Plaintiff then married Irwin Kroll, who resided in Seattle. A few days later, when defendant returned the children following their summer vacation visit with him, plaintiff took them and moved to Seattle. She did not obtain court permission to remove the children from Whitman county, but testified that the prosecuting attorney's office had advised her this was not necessary.

Defendant made the child-support payments due to and including August, 1947. He has made none since then, except for a five-hundred-dollar payment on the arrearage, in December, 1950. This payment was made at the suggestion of the court, as a condition to having the children visit defendant during that holiday season. Defendant sent gifts and small sums of money to the children from time to time during the period in question. His initial reason for discontinuing the support payments appears to have been that plaintiff's action in moving to Seattle in effect deprived him of reasonable visitation rights and the right to have the chil-

dren visit him in his home on alternate weekends during the school year. When the final one-thousand-dollar payment under the provisions of the interlocutory order relating to the division of property became due in December, 1947, defendant also refused to pay this. His reason was that plaintiff, upon vacating the family home, had taken personal property in a substantial amount which had been awarded to him under the interlocutory order.

Because of defendant's failure to pay child-support money and to pay this one thousand dollars, plaintiff refused to permit the children to visit him at his Whitman county home in the summers of 1948, 1949, and 1950. She did permit defendant to see the children in her Seattle home, or to take them from that home to restaurants and places of amusement in Seattle. Defendant visited the children in this manner four times over a three-year period. There is considerable evidence to indicate that each parent endeavored, while the children were in his or her custody, to alienate their affections for the other parent.

This impasse continued until June, 1950. Plaintiff then caused a writ of execution to be issued against defendant's property. This action put into motion the show cause proceedings now before us. The decree which resulted, and which is here under review, contains eleven provisions, most of which are made the subject of one or more assignments of error on the appeal or cross-appeal. We will consider the assignments on the appeal and cross-appeal together, in relation to the individual provisions of the decree.

Several of plaintiff's assignments of error challenge a provision of this decree, and the findings and conclusions tending to support it, which adjudges plaintiff to be in contempt of court. The findings of fact upon which this provisions appears to be based are to the effect that plaintiff has been wilfully disobedient to the terms of the interlocutory order with respect to the right of visitation, and that she wilfully and contemptuously disobeyed the provision of the restraining order which required her to deliver the children to defendant for visitation in the summer of 1950.

■ There is no doubt that plaintiff's action in both of these regards was contemptuous of the court. This is true notwithstanding the fact that defendant was also contemptuous of the court in declining to pay the support money. The provision of the interlocutory order with respect to visitation rights and the provision regarding payment of support for the children, were independent of each other. Neither party had the right to take the law into his or her own hands and refuse to carry out his or her own duties or obligations under the interlocutory order, because of a failure of the other party to abide by the terms of that order. The proper remedy was for the aggrieved party to seek enforcement of the interlocutory order through contempt proceedings, or to apply for a modification of the executory terms of that order.

■ But the purpose of the instant proceeding was not to determine whether either party was in contempt of court. The order of July 17, 1950, required plaintiff to show cause why the execution proceedings should not be enjoined and why she should not satisfy the three-thousand-dollar judgment. No other show cause order was entered, and there was no written or oral motion made at the hearings which opened up the contempt issue. The contempt in question was not committed in the presence of the court. It necessarily follows that the court had no authority at this hearing to find plaintiff to be in contempt. RCW 7.20.040 (Rem. Rev. Stat., § 1052 [P.P.C. § 20-7]); *Schaefer v. Schaefer,* 36 Wn. (2d) 514, 517, 219 P. (2d) 114.

For the reasons indicated, plaintiff must prevail with respect to the assignments of error referred to above.

Plaintiff and defendant each assign error with regard to several findings of fact, conclusions of law, and provisions of the decree dealing with the matter of arrearage in the payments for support of the children. One of these provisions restrains plaintiff from continuing the execution proceedings for the purpose of collecting such arrearage, and another provides that defendant shall pay this arrearage at the rate of twenty-five dollars a month, until it has been fully paid, without interest.

Plaintiff argues that these payments became final and conclusive as each installment accrued, and that the divorce decree constituted a judgment as to such unpaid installments, not subject to modification, which judgment may be collected by utilizing the usual provisional remedies. Defendant contends, on the other hand, that he should be permanently excused from paying child support arrearages which accrued during the period he was denied his rights of visitation.

The trial court's purpose in including these provisions in the decree is not specifically stated in the findings of fact and conclusions of law, or in the court's oral opinion. The record indicates, however, that the factors which may have moved the court were that these payments accrued during a period when plaintiff was denying defendant his rights of visitation; that payment of the arrearage by monthly payments over a long period might have a coercive effect in obtaining future obedience in this regard by plaintiff; and that the arrangement would ease a severe financial burden which would otherwise be placed upon defendant.

However salutary any or all of these purposes may have been, we are convinced that the trial court was without power to enter such an order. The rights and liabilities of the parties as to the payments for support of the children became absolute and fixed at the time provided in the decree for their payment. *Harris v. Harris,* 71 Wash. 307, 128 Pac. 673. They then became property rights. *Blethen v. Blethen,* 177 Wash. 431, 32 P. (2d) 543. They were not subject to modification. *Beers v. Beers,* 74 Wash. 458, 461, 133 Pac. 605.

*Goodsell v. Goodsell,* 38 Wn. (2d) 135, 228 P. (2d) 155, cited by defendant, is not in point. It was there specifically held that the trial court had not altered, modified, or vacated the interlocutory order, but had only sought to enforce its executory parts. Defendant calls attention to *Smith v. Smith,* 18 Wash. 158, 51 Pac. 355, wherein it was held that a divorced husband who had not paid alimony as provided in the divorce decree, had no standing in a court of equity to seek modification of that decree with respect to rights of

visitation. That rule no longer obtains in this state. *Wheeler v. Wheeler*, 37 Wn. (2d) 159, 222 P. (2d) 400. Moreover, it is not plaintiff who seeks affirmative relief in a court of equity, but defendant, who has himself disobeyed the provisions of the divorce decree regarding payments for the support of the children.

These accrued and unpaid installments did not, of their own force and effect, become liens upon defendant's property, since the divorce decree did not so provide. The unpaid installments did, however, provide the basis for writs of garnishment, writs of attachment, and general executions. *Swanson v. Graham*, 27 Wn. (2d) 590, 597, 179 P. (2d) 288. The provisions of the instant decree which purport to deny to plaintiff the right to pursue those remedies, which deprive her of interest on the arrearage, and which permit payment thereof on a monthly basis, are therefore, in effect, attempted modifications of the interlocutory order with respect to accrued and unpaid support money. This, as indicated above, may not be done.

Plaintiff's assignments of error regarding these provisions of the decree are therefore well taken. It follows that defendant's assignments of error, based on the contention that he should be excused from the payment of accrued arrearage, are without merit.

Plaintiff assigns as error the trial court's finding of fact that defendant was in arrears in the payment of support money "to the time of this hearing" in the sum of $2,250. The time referred to is apparently the date of the first hearing, held on September 8, 1950. The trial court's computation of arrearage therefore covers the period from September, 1947, to and including August, 1950. Plaintiff's assignment suggests that the court should have found that the arrearage was greater. However, she does not indicate what she believes the correct amount to be.

At the rate of seventy-five dollars a month, the arrearage for the thirty-six-months period referred to above would aggregate $2,700. However, the trial court apparently interpreted the interlocutory order as not requiring

these payments to be made during summer vacation periods of 1948, 1949, and 1950, when defendant was entitled to have the children with him. This would account for the $450 difference between the $2,700 computation shown above and the $2,250 arrearage as actually found by the trial court. In our view, the trial court properly interpreted this provision of the interlocutory order and entered the correct finding as to arrearage.

The decree under review provides that the five hundred dollars paid in December, 1950, be applied first on arrearages which accrued after September 8, 1950. We can see no reasonable objection to this provision.

The trial court disallowed defendant's request that the one-thousand-dollar balance due plaintiff under the provisions of the interlocutory order be considered as paid. Defendant assigns this as error.

During a recess in the trial of the divorce action, plaintiff asked defendant if he would permit her to remove some items of personal property from the home at Thornton, despite the apparent agreement of the parties that he be awarded all of the real and personal property. Defendant requested plaintiff to make a list of the items she desired to take. She did so and gave the list, signed by herself, to defendant. He gave his consent to the removal of these items, which, he estimates, were of the value of six hundred dollars.

Defendant claims that when plaintiff vacated the house she took additional items, of the total value of four hundred dollars, which he had not authorized her to remove. Asserting that he would not have consented to the removal of any personal property had he known plaintiff would take these additional items, defendant takes the position that he is entitled to a one-thousand-dollar credit, which exactly equals the balance due plaintiff under the divorce decree.

Plaintiff testified concerning each piece of property which it is contended she took without authority. As to most of these, she explained that the item had been her property prior to her marriage to defendant, or had been a gift to her after marriage, or had been the property of her

mother, or had not been removed by her. She candidly admitted, however, that twelve items which she removed constituted community property not listed in the memorandum referred to above. The record indicates that these items were of the approximate value of one hundred dollars. We are therefore of the view that the decree should be modified to the extent of granting defendant a credit in the amount of one hundred dollars on the one-thousand-dollar balance due under the interlocutory order.

■■ Plaintiff assigns as error the trial court's action in enjoining her, for a period of three years, from proceeding by execution or in any other way to collect the balance due her under the property settlement provisions of the interlocutory order. This balance, as indicated above, is now to be considered as nine hundred dollars.

The trial court did not indicate the reasons why it took this action. Whatever reason it may have had in mind, however, we are of the view that the court was without authority to enter such an order. The right to pursue statutory provisional remedies in an attempt to collect a judgment is inherent in the judgment. Hence, any restraint placed upon that right is, in effect, a modification of the judgment. The judgment in question was a provision of the interlocutory order relating to the division of property. Under RCW 26.08.110 (Rem. Supp. 1949, § 997-11), provisions of this character are final and conclusive, subject only to the right of appeal.

That section of the statute further provides that the trial court shall at all times have the power to grant any and all restraining orders that may be necessary to protect the parties and secure justice. In our opinion, however, this provision does not authorize interference with the collection of an unconditional money judgment contained in the divorce decree. If the statute were to be so construed, it would be unconstitutional as impairing a vested property right. *Blethen v. Blethen,* 177 Wash. 431, 32 P. (2d) 543.

We therefore hold that the trial court was without authority to restrain, in the manner indicated, the collection of the balance due on this judgment.

■ Plaintiff challenges a provision of the decree which modifies the interlocutory order of divorce to provide that, commencing with September 8, 1950, the support money payments would be reduced from seventy-five to fifty dollars a month.

Under RCW 26.08.170 (Rem. Supp. 1949, § 997-17), modification of an interlocutory order in this respect may be had only after the filing of a properly verified petition to modify. *State ex rel. Edwards v. Superior Court,* 37 Wn. (2d) 8, 221 P. (2d) 518. No such petition was filed in this case, nor was the issue raised directly or indirectly in defendant's affidavit filed in support of his motion for an order to show cause.

It is our conclusion that the jurisdiction of the court to modify the decree with respect to support payments was not properly invoked, and that the provision in question is therefore of no force or effect.

The decree under review also deals with the provisions of the interlocutory order regarding defendant's right of visitation. The interlocutory order had given him reasonable rights of visitation. It also provided that he could have the children with him in his home from June first to August first of each year and on alternate weekends during the school year. These rights are rearranged, in the instant decree, to give defendant the right to have the children with him in his home for at least six weeks during the summer school vacation period, he to furnish transportation to and from their home in Seattle. He was also given the right to have the children with him in his home during the Christmas school vacation for one week, beginning the day after Christmas.

Plaintiff makes no complaint regarding this latter provision, but urges that defendant's summer visitation rights be restricted to two weeks.

It will be observed that neither party is complaining of the change in visitation rights to the extent provided in the instant decree. It is therefore unnecessary to decide whether such change consitutes a modification of the divorce decree which was beyond the authority of the court in this pro-

ceeding (*State ex rel. Edwards v. Superior Court, supra*) or was a reasonable clarification of rights not amounting to a modification of the divorce decree. *Paulson v. Paulson,* 37 Wn. (2d) 555, 225 P. (2d) 206.

If plaintiff's effort to have such visitation rights further restricted be regarded as a request to modify the divorce decree, it must be rejected because not within the issues of this proceeding. If it be considered as only a request for clarification of the divorce decree, then it is our view that the trial court did not abuse its discretion in rejecting such request.

The cause is remanded with directions to modify the decree of July 6, 1951, in accordance with the views expressed in this opinion. Plaintiff will recover three-fourths of her costs and disbursements on appeal.

SCHWELLENBACH, C. J., HILL, FINLEY, and OLSON, JJ., concur.